STATE OF MISSOURI at the Relation of KANSAS CITY LIFE INSURANCE COMPANY, Relator, v. PERRY T. ALLEN, WALTER E. BAILEY and ROBERT J. SMITH, Judges of the Springfield Court of Appeals.— 85 S. W. (2d) 886.

Division Two, September 3, 1935.*

*David W. Hill, Frank W. McAllister* and *James W. Broaddus* for relator.

WESTHUES, C.—Relator in this case seeks, by certiorari proceedings, to quash the opinion of the Springfield Court of Appeals in the case of Wood v. Kansas City Life Ins. Co., reported in 75 S. W. (2d) 412, on the ground that the opinion is alleged to be in con-

*NOTE: Opinion filed at May Term, 1935, July 11, 1935; motion for rehearing filed; motion overruled at September Term, September 3, 1935.

flict with controlling decisions of this court, in particular the opinion in the case of State ex rel. Metropolitan Life Ins. Co. v. Shain, 334 Mo. 385, 66 S. W. (2d) 871.

The opinion of the Court of Appeals contains 'a comprehensive statement of the facts. We have concluded that it will not be necessary to restate them in full. A skeleton thereof will be sufficient for a disposition of the case.

The point was made in the Court of Appeals that a demurrer to the evidence offered by relator should have been sustained by the trial court. The Court of Appeals ruled that the trial court rightly overruled the demurrer. It is this part of the opinion of the Court of Appeals that relator seeks to quash. The plaintiff in the case was the widow of Wesley W. Wood. She sued relator, Kansas City Life Insurance Company to recover $2000, alleged to be due her as beneficiary under a ten-year convertible term life insurance policy on the life of her deceased husband. The opinion discloses the following:

Wood and one Alspaugh, while working on a highway, made application for insurance to defendant company, through its agent, located at Conway. The applications were signed July 8, 1932, at Ava, Missouri. The agent, Shields, informed the applicants that he would deliver the policies to them at Poplar Bluff, Missouri. The company accepted the application of Wood and issued him a policy on July 9, 1932, which was mailed to its agent, Shields, for delivery. The application of Alspaugh was not accepted, but the agent was notified to have Alspaugh examined by medical examiners located at Poplar Bluff. This caused a long delay. In fact the opinion does not disclose that the policy was ever issued. It does show that it had not been issued the latter part of August, 1932. Shields held Wood's policy intending to deliver it and Alspaugh's in person when he received Alspaugh's policy. For the first year's premium Wood gave three notes, which were due August 20, September 20, and October 1, 1932. The company accepted the notes. In August, 1932, defendant company notified Wood that the first premium note was due. Plaintiff, the wife of Wood, answered this letter August 25, stating that they did not have the money to pay the note and that her husband had been in bed the last four weeks with typhoid fever. The company then wrote Shields asking his advice about canceling the policy because of the sickness of Wood. It is not shown that any further action was taken. Shields kept the policy and it was not returned for cancellation. On October 7, 1932, the company notified Wood that all three of his premium notes were due, and demanded payment. In answer to this letter plaintiff, the wife of Wood, enclosed the amount due on the notes. The plaintiff also requested that the notes and policy be sent to her at Walnut Shade, Missouri. The company immediately returned the notes, marked paid, and in-

structed its agent, Shields, to deliver the policy. This the agent attempted to do. When Shields arrived at Walnut Shade he found that Wood had died September 11, 1932, whereupon he returned the policy to the company. Suit was brought by the plaintiff, as the beneficiary under the policy. The company defended, contending that the policy was not in force because of the following provisions in the application and the policy. The application reads as follows:

" 'If this application is not accompanied by the first premium in cash it is agreed that the company assumes no liability whatever until a policy of insurance is actually delivered to me during my lifetime and while I am in good health, and any money, check, note, obligation or other thing of value, given to the company or its agent, on account of the first premium on the policy applied for shall be held by the company merely as a deposit and not as payment until such time as the policy of insurance is issued and delivered to me during my lifetime and while I am in good health, after which the same shall be applied on such first premium charge; otherwise said deposit shall be returned to me or my heirs, executors or administrators.' "

The policy provides:

" '1. Unless the first premium has already been paid in cash, this policy shall not take effect until the first premium hereon has been paid and this policy delivered to the applicant within thirty days from the date hereof, and unless the applicant is in good health at the time of its delivery' "

The Court of Appeals held that the trial court was authorized in submitting the case to the jury on the theory that the evidence justified a finding that the company had waived the provisions just quoted. Relator, insurance company, in its brief tersely states its position as follows:

"Respondents base their holding that relator waived the condition of the policy relative to delivery solely upon what was done after the death of Wood. That, as this court said, is not the law.

"In addition to this, the above ruling of respondents that the fact that relator did not offer to return the premiums collected until the same were paid into court constituted evidence of waiver, is clearly in conflict with the Shain opinion, in view of the facts disclosed in respondents' opinion."

The company did not offer to return the money paid by plaintiff until it was deposited in court on June 28, 1933.

If the quoted statement of relator be true, then the opinion of the Court of Appeals is in direct conflict with the opinion in the Shain case, relied on by relator. This for the reason that if there was no contract of insurance at the death of Wood none could have been brought into existence by the acts of the company as proven in this case. The opinion in the Shain case so holds. If, on the other

hand, the company had waived the provisions of the policy quoted, prior to the death of Wood, and the policy was in force, then it was immaterial that the policy was not delivered prior to the death of Wood, nor was the failure to return the money to plaintiff material.

■ We find that the opinion of the Court of Appeals, holding there were sufficient facts in evidence to authorize a jury in finding there had been a waiver, was not based on acts done by the company after the death of Wood. Note that the court said after reviewing the evidence:

"It is our conclusion that the facts as herein set out at length were at least sufficient to make it a question for the jury as to whether or not the defendant waived the provisions in the application and in the policy (said provisions hereinbefore quoted) with reference to the application not being accompanied by cash, and also with reference to the applicant not being in good health. The evidence is convincing that the defendant accepted the notes and issued and ordered delivered the policy before the notes were paid.

"The evidence also shows that the defendant relied on its agent Shields with reference to the policy, for the evidence shows it asked Shields' advice about canceling the policy on account of sickness of the applicant. We think the evidence was at least sufficient to make the question of waiver of the provisions pertaining to good health on  for the jury."

The Court of Appeals then takes up the next question. It may seem, from the manner in which the question is approached, that the court had in mind the question of waiver after the death of Wood. But if we read through the entire paragraph, found on pages 417 and 418 of 75 S. W. (2d), we find that the Court of Appeals decided that the evidence was sufficient to authorize a finding that the company considered the policy in force and that it had waived delivery of the policy before the death of Wood. The whole paragraph reads:

"The question of waiver of the death of the applicant for the insurance before delivering the policy has not been so easily determined. We are not unmindful of the law as construed by the courts that a dead man cannot be insured, but in this instance we have some things that are established by proof, and some others that may be inferred. Here we have an agent authorized to take applications for insurance, and to deliver policies, and to take notes for the first annual premium. These notes were made payable to himself and endorsed by him to the defendant. It might well be inferred that this endorsement strengthened the notes, and because of such the defendant waived the stipulation in the application and ·in the policy, and accepted the notes as payment of the premium, and sent the policy to the agent, to be delivered. The inferences are that the defendant considered the notes good as cash, and considered the

contract closed. After the first note became due, demand was made upon the applicant for payment; within a short time after demand, the plaintiff wrote the defendant that she did not have the $5.90 with which to pay the note, and, in addition, told the defendant her husband had been sick with typhoid fever for about four weeks. Following that notice of ill health, the defendant wrote to its agent and advised him of the report of sickness, and asked him for advice with reference to cancellation of the policy on account of the applicant's sickness. The record is silent as to the advice the agent gave them, but at any rate the defendant kept the notes, did not attempt further to cancel the policy, but attempted to and did collect the notes after it had information that the insured had suffered with typhoid fever from shortly after the issuance of the policy. *Are these circumstances competent for the jury to consider on the question of waiving delivery before the death of the insured? We think so when considered along with other evidence and circumstances in the case.* Bear in mind that it was before the jury as to the taking of the notes and the endorsement thereof, with the mailing of the policy to the agent, together with the testimony showing the defendant's seeking the advice of its agent, and with the inference at least that he did not advise cancellation on account of sickness. After this information of sickness was received, the defendant kept the notes and later collected them, and kept the money for some time." (Italics ours.)

The Court of Appeals did refer to the evidence of acts done and the conduct on the part of the company after the death of Wood, but it did not hold that the company, by such conduct, waived anythink after Wood's death. The opinion, after repeating what happened, concludes:

"We think these are circumstances to be submitted to the jury on the theory that the defendant considered the policy in force and effect and that it considered the contract as completed. It is not our province to say that the evidence was sufficient. It is only for us to determine whether or not there was sufficient evidence with the inferences to be drawn therefrom to go to the jury. It is our conclusion that the trial court did not commit error in refusing the demurrer at the close of the whole case."

We interpret the opinion of the Court of Appeals to hold that the acts and conduct of relator, after the death of Wood, tended to show that the company considered the policy in force prior to the death of Wood.

So also in dealing with the question of the offer to return the money paid by plaintiff in discharging the premium notes. Relator contended that it could not have returned the money because there was no administration on the estate of Wood. The Court of Appeals answered this question in substance as follows: If an administrator

had been appointed he would not have been entitled to the money. The plaintiff in the case paid the notes. This the company knew. Plaintiff was, therefore, the proper person to whom tender should have been made. In this the Court of Appeals was correct. The court did not hold that because no tender was made prior to June, 1933, the defendant company could not make a defense. It concluded the discussion as follows:

"We have read each of the cases above cited by defendant, and we think that under the facts in this case the above cases are not in point and do not sustain the defendant's contention. On the contrary, we think the Carpenter case, supra, does not hold that the insurer may so conduct itself as to indicate that it has treated the contract as existing." The Carpenter case referred to is Carpenter v. St. Joseph Life Ins. Co., 212 Mo. App. 336, 246 S. W. 623.

The Court of Appeals in its opinion cited and considered the opinion of this court in State ex rel. v. Shain, supra, and correctly held that the facts in that case differed materially from the facts in the case under consideration. We fail to see any conflict in the opinions.

■ Relator, judging from its oral argument and brief, seems to feel that the opinion of the Court of Appeals permitted the plaintiff to reap the fruits of an alleged fraud. It does seem that plaintiff intentionally concealed the fact that her husband was dead at the time she paid the notes and asked for the policy, but the judgment was not affirmed on the basis of what was done after the death of Wood. This is where the case differs from the case of State ex rel. v. Shain, supra. In that case the reinstatement of the policy was obtained by fraud. In this case a strong, healthy man made application for insurance. His application was accepted by the company and the policy issued and sent to the agent for delivery more than two weeks prior to the time appellant became ill. The non-delivery of the policy was not the fault of the insured. The company did not cancel the policy when it learned of the applicant's illness. Suppose, for the sake of argument, Wood had lived and the policy had been delivered October 21, 1932, and a year later, say September 11, 1933, Wood had died without paying the second premium. Can it be doubted that the company would have then defended, and rightly so, on the ground that the policy had lapsed for nonpayment of the premium? [See National City Bank v. Missouri State Life Ins. Co., 332 Mo. 182, 57 S. W. (2d) 1066.] Neither is the company's contention in this case consistent with equity. The agent, Shields, held the applicant's policy for his own convenience, waiting for the arrival of another policy so that he could deliver the two at the same time. It could have, and should have been delivered prior to the sickness of Wood. When the company heard of the sickness of the applicant, prior to the delivery of the policy, it

did not see fit to cancel the policy. Insured died as the result of this sickness and the company contends no insurance existed. Wood, under the contention of the company, although entitled to have had the policy delivered, was without insurance for more than three months, during which time the company held Wood's premium notes. The conduct of the company certainly was sufficient to submit the question of waiver of delivery to the jury. In fact it seems to us that the company considered the policy in force until it heard of Wood's death. If the policy was in force, then the fraud, if any, on the part of the wife of Wood, in concealing the death of her husband, could not change the contract. Our only duty, on certiorari, is to determine whether any conflict exists. What we have said, aside from determining that question, was said in answer to the contention that the opinion of the Court of Appeals, as written, will permit parties to recover judgments against insurance companies, which have their foundation in fraudulent conduct. Such a contention is untenable.

It follows that our writ, heretofore issued, should be quashed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.